# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TEAMSTERS LOCAL UNION NO. 355,<br><br>    Plaintiff,<br><br>v.<br><br>ENSINGER PENN FIBRE, INC.,<br><br>    Defendant. | C.A. No. 21-1563-GBW |

Lance M. Geren, Ashley E. Macaysa, Paul D. Starr, O'DONOGHUE & O'DONOGHUE, New Castle, Delaware

*Counsel for Plaintiffs*

Laurence V. Cronin Smith, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware

Donald D. Gamburg, Immon Shafiei, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Philadelphia, Pennsylvania

*Counsel for Defendant*

Date: December 18, 2023

1

## **MEMORANDUM OPINION**

Pending before the Court are Plaintiff Teamsters Local Union No. 355's ("the Union") and Defendant Ensinger Penn Fibre, Inc.'s ("Ensinger") cross-motions for summary judgment. D.I. 14; D.I. 16. Pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, the Union seeks to partially vacate an arbitrator's award, issued on October 11, 2021, that addressed (1) the termination of Mr. Chad Hall's employment by Ensinger on October 14, 2020, and (2) the Union's challenge to the termination under the terms of a collective bargaining agreement between the Union and Ensinger. *See* D.I. 15. Having reviewed the parties' briefing, *see* D.I. 15; D.I. 17; D.I. 18; D.I. 19, the Court, for the reasons stated below, grants Ensinger's motion for summary judgment and denies the Union's motion for summary judgment.

## I. **LEGAL STANDARD**

Courts play a limited role when reviewing the decision of an arbitrator. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 35 (1987). Thus, the Court will confirm an arbitrator's award so long as the award is based upon an arguable, rational interpretation of the agreement, and "draws its essence from the collective bargaining agreement." *News America Publications, Inc. v. Newark Typographical Union*, 918 F.2d 21, 24 (3d Cir. 1990) (rational interpretation of the agreement); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) (essence of the agreement). Moreover, it is "not [the Court's] role to draw inferences that the factfinder did not" and, thus, the "findings of fact and inferences to be drawn therefrom are the exclusive province of the arbitrator." *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1297 (3d Cir. 1996) (citing *United Paperworkers*, 484 U.S. at 36, 44.) However, an arbitrator "does not sit to dispense his own brand of industrial justice." *Enterprise Wheel & Car*, 363 U.S. at 597. Accordingly, the Court will vacate an

award if the Court finds "no support in the record for [the Award's] determination or if [the Award] reflects a manifest disregard for the agreement, totally unsupported by principles of contract construction." *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993).

## II.  RELEVANT FACTS

At the outset of this matter, the parties agreed to submit for review by the Court the arbitrator's award on cross-motions for summary judgment based on the full record before the arbitrator. D.I. 21. Neither party asserts there exists a genuine dispute as to any material fact. *Id.* The facts, as presented in the parties' briefing and the arbitrator's opinion, are presented below.

The Union and Ensinger executed a collective bargaining agreement ("the CBA"), effective from January 1, 2020, through December 31, 2022, governing the terms and conditions of employment of certain classifications of non-supervisory employees employed by Ensinger at its Greenwood, Delaware, manufacturing facility. D.I. 15 at 2. The CBA includes, *inter alia*, a procedure for processing and adjusting grievances arising from alleged violations of the CBA, with binding arbitration as the final step thereof. *Id.*

Mr. Hall, the subject of the underlying arbitration, had been employed by Ensinger as an equipment operator for a period of twenty-nine (29) years as of his termination on October 14, 2020. *Id.* at 3. The terms and conditions of Mr. Hall's employment were governed by the CBA. *Id.* On October 14, 2020, Ensinger terminated Mr. Hall's employment "for the third instance in less than a month of leaving his workstation without first securing permission from a lead[person] or supervisor[.]" *Id.* Following the termination of Mr. Hall's employment, Mr. Hall and the Union filed a grievance through which they challenged the discharge as being without "just cause" and,

3

therefore, in violation of the CBA. *Id.* at 3-4. The Union and Ensinger were unable to resolve the grievance and, thus, the Union submitted the grievance to arbitration. *Id.*

The arbitrator found that Mr. Hall was away from his assigned work area without permission on October 14, 2020. *Id.* at 5. However, the arbitrator also found that Ensinger failed to seriously consider other evidence tending to support a penalty less stringent than dismissal, including "Mr. Hall's more than 28 years of apparently discipline free employment with the Company in its discharge decision." *Id.* at 6. Thus, the arbitrator concluded that Mr. Hall's employment was terminated without "just cause." *Id.*

Nonetheless, the arbitrator declined to award reinstatement and backpay, finding that Mr. Hall was under the influence of alcohol[1] at work on October 14, 2020. *Id.* at 6-7. The arbitrator further found that Ensinger learned that Mr. Hall was under the influence of alcohol at work after Mr. Hall's employment was terminated. *See, e.g.*, D.I. 17, Ex. A at 30. In addition, the arbitrator concluded that Mr. Hall's use of alcohol at work was a "major violation" that "warrant[ed] immediate dismissal." *Id.* Accordingly, the arbitrator found that Mr. Hall would have been discharged for being under the influence of alcohol at work on October 14, 2020, and that reinstatement would be futile because Mr. Hall's intoxication was "post discharge misconduct that

---

[1] The Union contends that the issue of whether Mr. Hall was under the influence of alcohol while at work on October 14, 2020 was not litigated because it was not the formal basis for Mr. Hall's termination. *See id.* The Court finds that the issue was litigated because the term was at issue for, at the least, the reason stated by the examiner—Ms. Nock's state of mind prior to Mr. Hall's termination on October 14, 2020. In any event, the Union cites no authority for its proposition that the arbitrator's findings of fact on ancillary issues are not binding on this Court. *See id.*

4

[was] so serious that it would warrant another discharge if the grievant were put back to work." *See id.*

At the arbitration hearing, Ensinger employees testified that Mr. Hall was under the influence of alcohol at work. *See, e.g., id.* at 30-31. They further testified that being under the influence of alcohol at work was a violation that could lead to dismissal. *Id.* Ms. Nock, an Ensinger employee, testified that Ensinger's Employee Handbook has a list of "major disciplinary items," that some of those items "deal with in some part alcohol," and that those items could "lead to immediate dismissal on the first occurrence." D.I. 17 at 7-8. Further, Ms. Nock testified that, on October 14, 2020—but prior to Mr. Hall's dismissal—other Ensinger employees saw Mr. Hall frequently go to the bathroom with a toothbrush and, thus, raised concerns that Mr. Hall might be drinking at work. *Id*, Ex. B at 76. She further testified, however, that those claims were "not enough information to pursue [the claims that Mr. Hall might having been drinking at work]" but that she planned to "observe him throughout the day." *Id.*

Mr. Fisher and Mr. Caparatta, also Ensinger employees, then testified that they smelled alcohol on Mr. Hall's breath after Mr. Hall's discharge meeting. D.I. 17 at 7-10. In addition, Mr. Fisher testified that he confronted Mr. Hall about smelling alcohol on his breath and told Mr. Hall that he needed to get a ride home. *Id.* at 8. Mr. Fisher testified that, in response, Mr. Hall told him that he was going to "walk it off." *Id.*

Based on the testimony presented, the arbitrator, *inter alia*, concluded that (1) the Employee Handbook classified being under the influence of alcohol at work as a major violation warranting immediate dismissal, (2) the statements made by Mr. Fischer and Mr. Caparatta acknowledged that Mr. Hall smelled of alcohol at the conclusion of the October 14 discipline

meeting, and (3) the statement made by Mr. Hall that he would "walk it off" was an admission that he was under the influence of alcohol at work. *Id.*, Ex. A at 30.

### III. DISCUSSION

#### A. The Arbitrator's Finding that After-Acquired Evidence Barred Mr. Hall's Recovery for Ensinger's Violation of the CBA was Supported by the Record.

On appeal, the Union argues that Ensinger's suspicion that Mr. Hall had consumed alcohol at work on October 14, 2020 arose prior to Ensinger's decision to terminate Mr. Hall's employment. D.I. 15 at 12. As a result, the Union contends Mr. Hall's consumption of alcohol was not "after-arising" evidence sufficient to deny awarding reinstatement and back pay after a finding that Mr. Hall was discharged without "just cause." *Id.* at 14-15. Moreover, the Union argues that—because Ensinger was suspicious that Mr. Hall was under the influence of alcohol prior to the meeting where Ensinger terminated Mr. Hall's employment but did not include that charge in Mr. Hall's formal termination notice—Ensinger chose not to terminate Mr. Hall's employment for being under the influence of alcohol at work. *Id.* at 15-16. Thus, the Union contends Ensinger could not have found that Mr. Hall's consumption of alcohol at work was a sufficient basis to terminate Mr. Hall's employment. *Id.*

Conversely, Ensinger argues that—while suspicious that Mr. Hall was under the influence of alcohol—it lacked actual knowledge that Mr. Hall was under the influence of alcohol at work until after Ensinger terminated Mr. Hall's employment. D.I. 17 at 19. Further, Ensinger contends that the arbitrator possessed sufficient evidence to find that Ensinger "would have" discharged Mr. Hall had it known Mr. Hall was under the influence of alcohol at work. *See, e.g., id.* at 11.

The Court finds that the arbitrator's decision was supported by the record. *See Exxon Shipping II*, 993 F.2d 357, 360 (3d Cir. 1993) ("an award should only be vacated if there is no

6

support in the record for the arbitrator's determination or if the arbitrator demonstrated manifest disregard for the agreement entirely unsupported by principles of contract construction."). The arbitrator declined to award reinstatement and backpay because he found that Ensinger would have terminated Mr. Hall's employment for being under the influence of alcohol at work on October 14, 2020, had Ensinger known Mr. Hall consumed alcohol at work. *See, e.g.*, D.I. 17, Ex. A at 30. Contrary to the Union's argument, it is not "undisputed" that Ensinger was aware that Mr. Hall was under the influence of alcohol at work prior to terminating his employment. D.I. 15 at 16-17. Ms. Nook, for example, testified that there was not enough information to pursue the claims raised by other employees earlier in the day that Mr. Hall had been consuming alcohol at work. D.I. 17, Ex. B at 76. Thus, there is support for the arbitrator's conclusion that Ensinger was not aware that Mr. Hall was under the influence of alcohol at work until after Mr. Hall's employment was terminated. *See id.*

Moreover, while the Union attaches much cachet to the fact that Ensinger determined Mr. Hall was under the influence of alcohol prior to leaving Ensinger premises, the Court is not convinced that this compels a different result. *See, e.g.*, D.I. 15 at 12. The Union contends that the CBA required Ensinger to, "[a]t the time of discharge," "give[] written notice of the reason for [Mr. Hall's]...termination." *See, e.g., id.* at 19. Thus, the arbitrator could have reasonably concluded that Mr. Hall's "time of discharge" was when Mr. Hall was presented with his termination notice—i.e., at the October 14, 2020 disciplinary meeting. *See id.* Accordingly, because the arbitrator concluded that Ensinger discovered that Mr. Hall was under the influence

7

of alcohol at work "immediately following the October 14 post-discharge meeting," Ensinger's discovery occurred after Mr. Hall's employment was terminated. D.I. 17, Ex. A at 30.

Moreover, the Court is not persuaded by the Union's argument that the record shows that Ensinger chose not to terminate Mr. Hall's employment for being under the influence of alcohol at work. D.I. 15 at 15-16. The arbitrator concluded that Ensinger was aware of Mr. Hall's consumption of alcohol at work only after the October 14, 2020 meeting where Ensinger terminated Mr. Hall's employment. D.I. 17, Ex. A at 30. Accordingly, Ensinger could not have considered Mr. Hall's consumption of alcohol prior to terminating Mr. Hall's employment. *Id.*

In any event, the Court will vacate an award only if there is "no support in the record" for the award's determination. *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993). Ms. Nook's testimony that the Ensinger Employee Handbook contained major disciplinary items dealing with alcohol and providing for immediate dismissal on the first occurrence provides support for the arbitrator's conclusion that Ensinger would terminate the employment of an employee that was under the influence of alcohol at work. *See id.*, Ex. B at 76.

## B. The Arbitrator did not Exceed his Authority Under Article 12 of the CBA by Finding that After-Acquired Evidence Barred Mr. Hall's Recovery.

Next, the Union argues that Article 12 of the CBA required Ensinger to provide Mr. Hall "written notice of the reason for his or her termination" and that Article 7 prohibited the arbitrator from "adding to, subtracting from, supplementing or modifying in any way any of the provisions, terms or conditions of the CBA" (cleaned up). D.I. 15 at 17-19. Thus, the Union contends Ensinger could not add a "reporting to work while under the influence" charge to its stated reasons for terminating Mr. Hall's employment. *Id.* Accordingly, the arbitrator exceeded his authority

8

under the CBA by finding that Mr. Hall's consumption of alcohol at work was a separate, sufficient basis for Mr. Hall's termination. *Id.*

Ensinger responds that Article 12 is inapposite to the doctrine of after-acquired evidence. D.I. 17 at 22. Ensinger contends that a violation of Article 12's written discharge notice requirement affects only whether an employer's termination of an employee's employment was for "just cause." *Id.* at 23. The after-acquired evidence doctrine, however, deals with the appropriate remedy for an employee whose employment was terminated without "just cause." *Id.* Thus, after-acquired independent grounds for termination are sufficient to conclude that the appropriate remedy for a discharge that was not for "just cause" is "no remedy"—even if the after-acquired grounds were not set forth as required by Article 12. *Id.*

The Court finds that, under the doctrine of after-acquired evidence, the "wrongdoing" of the employee is considered merely for the purpose of determining the appropriate remedy for the terminated employee. *See* D.I. 17 at 22. As a result, the Court finds that the arbitrator did not exceed his authority under the CBA.

The doctrine of after-acquired evidence is equitable in nature. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362 (1995). In *McKennon*, the Supreme Court interpreted the ADEA, a law prohibiting discrimination in the workplace that provides for remedial relief similar to that provided under the CBA—i.e., reinstatement and backpay. *Id.* The Court explained that wrongdoing on the part of the employee was relevant in determining the appropriate remedial action for a violation of the ADEA because of the "lawful prerogatives of the employer in the usual course of its business" and the "corresponding equities that [the employer] has arising from the employee's wrongdoing." *Id.* Further, the Court explained that an employer seeking to rely upon after-acquired evidence of wrongdoing must first establish that the wrongdoing was of such

9

severity that, had the employer known of the wrongdoing at the time of discharge, the employee would have been terminated on those grounds alone. *Id.* at 362-363. Thus, Article 12 is inapposite because whether an employer writes down why it terminated an employee's employment is irrelevant to whether the employee's conduct was sufficient for the employer to terminate her employment in the first instance. *See id.*

## IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that:

(1) The Union's Motion for Summary Judgment is **DENIED**. *See* D.I. 14.

(2) Ensinger's Cross-Motion for Summary Judgment is **GRANTED**. *See* D.I. 16.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Date: December 18, 2023